1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

BRYAN JAMES STROTHER,                    No.  2:16-cv-00255-TLN-CKD

12
                        Plaintiff,
13
        v.                                            **ORDER**
14
DAVID S. BALDWIN, et al.,
15
                        Defendants.
16

17          This matter is before the Court pursuant to three motions.  The first is Defendants David

18   S. Baldwin and Michael McCord's ("Defendants") Motion to Dismiss.[1]  (ECF No. 13.)  Plaintiff

19   Bryan James Strother ("Plaintiff") opposes the Motion to Dismiss.  (ECF No. 28.)[2]  The second is

20   Plaintiff's motion for a preliminary injunction and class certification ("Motion for Class

21   Certification").  (ECF No. 15.)  Defendants oppose the Motion for Class Certification.  (ECF No.

22   _____

23   [1]         The complaint indicates this action is brought against Defendants Baldwin and McCord "both individually
     and in their official capacities."  (ECF No. 1 at 1.)  Defendant Baldwin is the Adjutant General of the California
     Army and Air National Guard.  (*See* ECF No. 1; ECF No. 13-1 at 2. n.1)  Defendant McCord is the Pentagon
24   Comptroller.  (ECF No. 1; ECF No. 13-1 at 2. n.1.)  In the caption of the complaint, Defendant McCord's position
     was given as "Pentagon Comptroller [sic] Department of Defense, Defense Finance and Accounting Service."  (ECF
25   No. 1 at 1.)  This resulted in the docket erroneously indicating that Defense Finance and Accounting Services and
     United States Department of Defense are separate Defendants.  The Clerk of the Court is ordered to update the docket
26   accordingly.

27   [2]         This Court struck an earlier, overlong opposition filed by Plaintiff.  (*See* ECF No. 26.)  All references to
     Plaintiff's opposition with respect to the Motion to Dismiss are to ECF No. 28.  Defendants had already filed a reply
28   by the time the Court issued its order granting Defendants' Motion to Strike.  Defendants subsequently indicated they
     were relying on their already-filed reply.  (ECF No. 30)  Consequently, all references to the reply are to ECF No. 21.

1

16.) The third is Defendants' motion to strike statement of interest of amicus curiae ("Motion to Strike"). (ECF No. 36.) Plaintiff has not filed an opposition to the Motion to Strike.

The Court has carefully considered the arguments raised by the parties. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part. This results in the dismissal of each of the causes of action set forth in the complaint. (ECF No. 1.) Because this leaves the instant action without an operative complaint, the Motion for Class Certification is DENIED as MOOT. Likewise, the Motion to Strike is DENIED without prejudice, subject to renewal if Plaintiff files an amended complaint.

## I.    INTRODUCTION AND BACKGROUND

The allegations contained in the complaint are sobering. In short, Plaintiff contends that he reenlisted in the California Army National Guard ("CANG") during a time of war with the understanding he would receive certain reenlistment bonuses and incentive payments. (*See* ECF No. 1 at ¶¶ 7–8, 33–34, 36–39, 48, 86.) He did receive them and was subsequently sent to serve his country in Iraq. (*See* ECF No. 1 at ¶¶ 48, 53.) Nevertheless, years later, the military determined that he was not entitled to these bonuses and payments. (*See* ECF No. 1 at ¶ 53.) At the time of the filing of this action, the bonuses and payments he received were being "recouped" from his pay. (*See* ECF No. 1 at ¶¶ 19, 53–54.) According to Plaintiff, many of his fellow members of CANG similarly reenlisted with this same understanding and have suffered the same fate. (*See* ECF No. 1 at ¶¶ 4, 7, 19, 33–34, 37–38, 54.) For this reason, Plaintiff filed a complaint containing class allegations and currently seeks to certify this as a class action. (*See generally* ECF Nos. 1 & 15.)

During the pendency of this action, there have been significant developments. While the parties differ as to their legal consequences, the developments are not materially in dispute. They are as follows: On August 4, 2016, the Defense Office of Hearings and Appeals issued a decision

/ / /

/ / /

/ / /

2

waiving Plaintiff's alleged obligation to repay his $15,000 reenlistment bonus.[3]  (ECF No. 41 at 2.)  On August 15, 2016, the Defense Finance and Accounting Service refunded to Plaintiff $4,885.51 — the entire amount it had withheld from Plaintiff's pay in connection with the recoupment at issue in this case.  (ECF No. 41 at 2.)  On December 23, 2016, the National Defense Authorization Act of 2017 ("NDAA") was signed into law.  (ECF No. 41 at 2.)  The NDAA provided that "[t]he Secretary of Defense shall conduct a review of all bonus pays [and] student loan repayments . . . that were paid to members of the National Guard of the State of California during the period beginning on January 1, 2004, and ending on December 31, 2015."  Pub. L. 114-328, § 671(c), Dec. 23, 2016, 130 Stat. 2000, 2174.  The Department of Defense conducted a review of Plaintiff's incentive payments and waived the remainder of Plaintiff's alleged "debts."[4]  (ECF No. 41 at 2.)  Defendants assert that the Department of Defense reviewed incentive payments made to 17,485 CANG members and, after that review, all but 393 "received favorable determinations," similar to those received by Plaintiff.[5]  (ECF No. 41 at 3.)

The Motion to Dismiss poses a series of complex legal questions, including with respect to the scope of this Court's jurisdiction in our constitutional system.  These questions are measured under different legal standards and implicate different procedural mechanisms.  For this reason, it would be inefficient to follow the Court's typical practice of setting out the standard of review immediately after this introductory section.  Instead, the Court will proceed directly to its analysis of the Motion to Dismiss, setting out the relevant legal standard as appropriate.

---

[3]     Defendants throughout their submissions refer to "debts" or "obligations" of Plaintiff and others.  This assumes the correctness of Defendants' legal position that Plaintiff and his fellow CANG members were legally obligated to return the bonus and other incentive payments they received or otherwise were in the government's debt.  Obviously, the Court cannot proceed from this assumption.  Consequently, the Court will use the descriptor "alleged" throughout this Order.

[4]     Defendants submit the Department of Defense waived a total $25,010.32.  (ECF No. 41 at 2.)  However, Defendants observe Plaintiff's submissions in this case gave the figure subject to recoupment as $20,010.32 in some places and $25,010.32 in another.  (ECF No. 41 at 2 n.1.)  Defendants contend this discrepancy is immaterial because the waiver would cover the higher of the two figures.  This discrepancy is not addressed in Plaintiff's reply.  In any event, the Court agrees this discrepancy is immaterial to the resolution of the Motion to Dismiss.

[5]     The precise relief received by these CANG members depended on whether their alleged "debt" had already been "established and certified for recoupment" and whether such recoupment had begun.  (ECF No 41 at 3.)  According to Defendants, where the alleged "debt" was "established," it was waived and any amounts recouped were refunded.  (ECF No 41 at 3.)  Where the alleged "debt" was not yet "established" a "determination" was made that "no debt would be established."  (ECF No. 41 at 3.)

3

## II.    ANALYSIS

The complaint contains the following five causes of action: (i) "failure to train" pursuant to 42 U.S.C. § 1983; (ii) "breach/impairment of contracts"; (iii) "intentional misrepresentation"; (iv) "deceit or intentional fraud"; and (v) "concealment fraud". (ECF No. 1.) Defendants move to dismiss these claims for three separate reasons. (ECF Nos. 13 & 13-1.) First, Defendants argue the instant action must be dismissed for lack of Article III jurisdiction as developments since the commencement of this action have rendered each of these causes of action moot. (ECF No. 41.) Second, Defendants move to dismiss the third, fourth, and fifth causes of action for failure to comply with the Federal Tort Claim Act's ("FTCA") administrative exhaustion requirement. (ECF No. 13-1 at 11–12.) Third, Defendants argue that each of the causes of action should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. (ECF No. 13.)

As Defendants' mootness arguments challenge this Court's constitutional authority to reach the merits of Plaintiff's causes of action, the Court addresses them first. As discussed in more detail below, the Court finds as follows: none of the causes of action in the complaint are moot; Defendants' arguments relating to sovereign immunity and the FTCA require the dismissal of the third, fourth, and fifth causes of action insofar as they are brought against federal officials in their official capacities; and each of the causes of action fails to state a claim. The Court will analyze the parties' arguments in that order.

### A. Mootness

Defendants contend that the entire "dispute has become moot and must be dismissed" for lack of subject matter jurisdiction.[6] (ECF No. 41 at 1.) In Defendants' view, "[t]he complaint in this action seeks three types of relief: an order preventing any further recoupment in connection with [Plaintiff's] reenlistment bonus and [Student Loan Repayment Program ("SLRP")] payments, a refund of the amounts previously withheld, and declaratory relief." (ECF No. 41 at

---

[6]    As an initial matter, this Court authorized the parties to file supplemental briefing on mootness on September 11, 2017. (ECF No. 40.) While the parties have denominated this briefing "supplemental," in reality this briefing completely supplants their original submissions on mootness. By that, the Court means the parties fully restate their previous arguments alongside their new ones. Consequently, for ease of reference, the Court will cite solely to the supplemental briefing throughout this Order when analyzing the parties' mootness arguments.

4.)  According to Defendants, since the commencement of this action, the Department of Defense has "stopped recouping [Plaintiff's] reenlistment bonus and SLRP payments[, . . . .] refunded all of the payments previously recouped [from Plaintiff], and waived the [alleged] debts at issue." (ECF No. 41 at 4–5.)  Defendants state "there is no chance that the reenlistment bonus and SLRP payments will be recouped in the future."  (ECF No. 41 at 4.)  Consequently, Defendants assert "[t]his is the very definition of a moot case" as there is no meaningful relief that Plaintiff has requested which he has not already received.  (ECF No. 41 at 4–5.)

Assuming their primary argument demonstrates Plaintiff's "individual claims are plainly moot," Defendants offer a preemptive argument "anticipat[ing]" — correctly — Plaintiff would argue that "the case as a whole is not moot because it is a putative class action, and some potential relief can still be afforded to putative class members."  (ECF No. 41 at 5–7.)  In short, it is Defendants' contention that "Ninth Circuit precedents finding that putative class actions are not moot [in some circumstances], even after a named plaintiff's claims have become moot, do not apply here[.]"  (ECF No. 41 at 6.)

The Court finds that Defendants' primary argument fails with respect to each of Plaintiff's five causes of action.  Consequently, the Court need only briefly discuss Defendants' argument relating to the claims of the putative class.  However, the Court will first set out the legal standard for mootness, before analyzing these arguments.

### i.    Legal Standard

Mootness is properly raised in a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, as it pertains to a federal court's subject matter jurisdiction under Article III of the Constitution.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "Article III of the Constitution limits the jurisdiction of the federal courts to 'Cases' or 'Controversies.'"  *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1086 (9th Cir. 2011).  The Supreme Court has "repeatedly held that an actual [case or] controversy must exist not only at the time the complaint is filed, but through all stages of the litigation."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (internal quotation marks omitted).  "A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — when the issues presented are no longer

'live' or the parties lack a legally cognizable interest in the outcome." *Id*. at 91 (some internal quotation marks omitted).

The "central question" in determining mootness is "whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005) (en banc). This basic question is asked separately for each cause of action. *Chew v. Gates*, 27 F.3d 1432, 1437 (9th Cir. 1994); *see also Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1144 (9th Cir. 2016) ("[A]n individual claim . . . becomes moot when a plaintiff actually receives all of the relief he or she could receive on the claim through further litigation.") (emphasis removed). A cause of action is not moot because the "primary and principal relief sought" is no longer available. *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (internal quotation marks omitted). "The question is not whether the precise relief sought at the time the case was filed is still available[.]" *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 862 (9th Cir. 2017). Rather, the question is "whether there can be any effective relief." *Id*. "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013).

### ii. Whether Plaintiff's case is moot?

At the outset, the Court observes that Defendants' primary mootness argument is fundamentally flawed. Simply put, it fails to engage in a cause-of-action-by-cause-of-action analysis of the relief presently available to Plaintiff in light of the changed circumstances that Defendants contend have mooted the instant action. (*See, e.g.*, ECF No. 43 at 2.) However, the practical effect of this problem is limited by deficits in Plaintiff's reply brief. Despite being squarely challenged to do so, Plaintiff failed to identify any form of declaratory or injunctive relief that he could receive with respect to his individual claims that he had not already received. (*Compare generally* ECF No. 44 *with* ECF No. 41 at 4–5.) Accordingly, with respect to each of the causes of action, the Court finds Plaintiff has conceded that his individual claims for declaratory and injunctive relief have become moot during the pendency of this action. *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal.

6

2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

While the parties' shortcomings in briefing mootness were unhelpful, contrary to Defendants' suggestion, the Court cannot proceed to Defendants' non-mootness arguments without resolving the mootness issues they raised. (*See, e.g.*, ECF No. 43 at 5.) "Mootness is, of course, a threshold jurisdictional issue." *Sea-Land Serv., Inc. (Pac. Div.) v. Int'l Longshoremen's & Warehousemen's Union*, 939 F.2d 866, 870 (9th Cir. 1991). "In our system of government, courts have no business deciding legal disputes or expounding on law in the absence of such a case or controversy." *Already, LLC*, 568 U.S. at 90 (internal quotation marks omitted). Parties cannot confer Article III jurisdiction on a federal court by consenting to have that court resolve a moot legal controversy. *See N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 469 n.3 (9th Cir. 1986) (citing *Lake Coal Co. v. Roberts & Schaefer Co.*, 474 U.S. 120 (1985)). Likewise, the Court is not free to assume away a tricky question of mootness in order to reach what it may suspect is "an 'easy' merits question" on the other side of the jurisdictional hurdle. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 99 (1998). With this is mind, the Court will engage in a systematic analysis of the relief still available to Plaintiff as an individual (as opposed to the putative class).

Plaintiff's first cause of action is not moot because at a minimum Plaintiff could receive nominal damages for the alleged violation of his constitutional rights brought pursuant to 42 U.S.C. § 1983. For purposes of analyzing mootness, the Court accepts Plaintiff's position that his § 1983 claim actually asserts his due process rights were violated.[7] (*See* ECF No. 28 at 21.) It is well-settled that a plaintiff with a § 1983 claim differs from a typical tort plaintiff in that he can recover nominal damages. *See, e.g.*, *Carey v. Piphus*, 435 U.S. 247, 266 (1978) ("[W]e believe

---

[7] As Defendants correctly note, the complaint is not a "model of clarity." (ECF No. 13-1 at 2.) Indeed, the words "due process" never appear in the complaint. (*See generally* ECF No. 1.) However, the Court is not free to determine whether Plaintiff's first cause of action fails to state a claim under Rule 12(b)(6) before resolving the mootness question. While "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss," *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014), an opposition can save a cause of action from dismissal for mootness if it demonstrates what relief is presently available with respect to a cause of action the non-movant contends is not moot. *See Bayer*, 861 F.3d at 869. Of course, that cause of action may very well fail to state a claim.

that the denial of procedural due process should be actionable for nominal damages without proof of actual injury."); *see also Draper v. Coombs*, 792 F.2d 915, 922 (9th Cir. 1986) ("Even assuming that Draper did not suffer actual damages as a result of the unlawful extradition, his complaint stated valid section 1983 claims for nominal damages.").  Moreover, the Ninth Circuit has made it repeatedly made clear that "[a] live claim for nominal damages will prevent dismissal [of a cause of action] for mootness."  *See, e.g.*, *Bernhardt v. Cty. of Los Angeles*, 279 F.3d 862, 872 (9th Cir. 2002).

 Plaintiff's second cause of action is not moot for much the same reason.  While never clearly stated, the parties' arguments assume Plaintiff's breach of contract claim is governed by California law.  (*Compare* ECF No. 1 at ¶ 76 (contending it was wrongful to recoup his bonus and other incentive payments after the expiration of California's statute of limitations) *with* ECF No. 43 at 4 (citing California authority regarding the non-availability of "[e]motional distress damages . . . under contract law").)  For the purposes of resolving the question of mootness, the Court will assume this as well.  California law allows a "[a] plaintiff . . . to recover nominal damages for the breach of a contract, despite inability to show that actual damage was inflicted upon him, since the defendant's failure to perform a contractual duty is, in itself, a legal wrong that is fully distinct from the actual damages."  *Sweet v. Johnson*, 169 Cal. App. 2d 630, 632 (1959) (internal citation omitted); *see also* Cal. Civ. Code § 3360 ("When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."). This is sufficient for purposes of Article III's case or controversy requirement.  *See Bernhardt*, 279 F.3d at 872; s*ee also In re Facebook Privacy Litig.*, 192 F. Supp. 3d 1053, 1060–62 (N.D. Cal. 2016) (holding that Article III standing exists where a plaintiff seeks to "recover nominal damages for breach of contract even in the absence of actual damages") (quoting *Sweet*, 169 Cal. App. 2d at 632).

 The Court will address Plaintiff's third, fourth, and fifth causes of action together, as the parties have done so.  Defendants' arguments warrant only a brief response.  In their opening brief, Defendants acknowledge that "in numerous places [Plaintiff] asks for repayment of amounts already recouped, *as well as other damages*."  (ECF No. 13-1 at 4 (emphasis added).)  In

fact, Defendants provide pin-citations to the complaint on precisely this point, including with respect to the three causes of action at issue.  (ECF No. 13-1 at 4.)  However, when it came time to discuss mootness, Defendants suggested that Plaintiff has sought only "three types of relief" and that these did not include damages beyond the money recouped.  (ECF No. 41 at 4.)  When Plaintiff drew attention to this discrepancy, Defendants' two-sentence response did not contest that under California tort law Plaintiff could recover damages beyond the return of the recouped money.  (*See* ECF No. 43 at 4.)  For purposes of resolving the mootness question, the Court will accept this as true.  Instead, Defendants argue these claims are barred by the FTCA.  (ECF No. 43 at 4.)  This, of course, has nothing to do with whether the claims at issue are moot.

For the foregoing reasons, the Court finds none of the five causes of action are moot as to Plaintiff as he continues to have a concrete interest in the outcome of this litigation with respect to each of them.

### iii.       Whether the claims of the putative class are moot?

Defendants' argument with respect to the putative class is premised on the theory that Plaintiff's "individual claims are plainly moot."  (ECF No. 41 at 5.)  For the reasons just discussed, this is not the case.  Consequently, a lengthy discussion is not required.  *Cf. Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016) ("While a class lacks independent status until certified, a would-be class representative with a live claim of her own must be accorded a fair opportunity to show that certification is warranted") (internal citation omitted).

The Court will make two additional points before proceeding.  First, each of the five causes of action presents a live controversy with respect to the entire class with respect to damages.  The arguments in the preceding section apply with equal force with respect to nominal damages for the first two causes of action and damages beyond return of the recouped money for the remaining three.  Second, Defendants acknowledge hundreds of members of the putative class have not had their alleged debts cancelled and are still subject to recoupment.  Defendants have offered no argument that the requests for declaratory and injunctive relief have not been mooted for the putative class.

///

B.  <u>Sovereign Immunity/Federal Tort Claims Act</u>

The Court now turns to Defendants' contention that the third, fourth, and fifth causes of action are barred for failure to comply with the FTCA's administrative exhaustion requirement to the extent they are brought against Defendants in their official capacities as federal officials. (ECF No. 13-1 at 11–12.)  There is, however, a preliminary question: whether — and, if so, to what extent — the third, fourth, and fifth causes of action are made with respect to Defendant Baldwin in his capacity as a federal official.[8]

      i.     *Whether Defendant Baldwin was acting in a federal capacity?*

What may have been a straightforward question has, unfortunately, been rendered insoluble for reasons the Court will now explain.  As the Supreme Court has explained, "members of the State [National] Guard . . . .[,] [i]n a sense, . . . must keep three hats in their closets — a civilian hat, a state militia hat, and an army hat — only one of which is worn at any particular time."  *Perpich v. Dep't of Def.*, 496 U.S. 334, 348 (1990).  Defendants begin the relevant portion of their opening brief by acknowledging the existence of *Perpich*, along with the observation that Defendant Baldwin was "appointed by the Governor of California to command [CANG] as [t]he Adjutant General of California."  (ECF No. 13-1 at 8.)  Without explaining how this introduction supports their position, Defendants assert that "[b]ecause the allegations in the complaint relate exclusively to the administration of federal funds authorized pursuant to federal statutes governing military recruitment by a federally-recognized reserve component of the United States Army, [Defendant] Baldwin at all times was acting pursuant to federal, not State, law."  (ECF No. 13-1 at 8.)  Plaintiff responds that "Defendant Baldwin is the head of the [CANG]," Plaintiff's action is being brought "against the office[] [Defendant Baldwin] hold[s]," and that Defendant Baldwin is "[i]n every sense . . . a [s]tate [a]ctor appointed by the Governor of California."  (ECF No. 28 at 18.)  In their reply, Defendants assert "[t]he allegations in the complaint . . . make clear that [Defendant] Baldwin was at all times acting in his federal capacity." (ECF No. 21 at 6.)

The Court accepts for purposes of resolving this preliminary question that *if "[t]he allegations in the complaint . . . ma[d]e clear* that [Defendant] Baldwin was at all times acting in

---

[8]    Defendant McCord's status as a federal (rather than a state) official is not contested.

his federal capacity" that Defendants' FTCA arguments would resolve the third, fourth, and fifth causes of action with respect to Defendant Baldwin in his official capacity. (ECF No. 21 at 6 (emphasis added).) The problem is that the complaint does nothing of the sort. That is presumably why Defendants do not cite to the complaint in support of that contention. As Defendants more accurately observe at the outset of their opening brief, the complaint "is not a model of clarity." (ECF No. 13-1 at 2.) Indeed, in connection with the three causes of action at issue here, Defendants accuse Plaintiff of *making no "effort to . . . specify the role* of each [Defendant] in the [allegedly] fraudulent scheme" and characterizing the complaint as "*provid[ing] no basis whatsoever* for each [Defendant] *to determine* what *their alleged individual role was*[.]" (ECF No. 21 at 9 (emphasis added).) The Court is no better situated than Defendants to make the complaint tell a coherent, comprehensible story that clarifies Defendant Baldwin's role in events. Simply put, the Court cannot accept Defendants' argument that it is clear that Defendant Baldwin is being sued for "acting in his federal capacity." (ECF No. 21 at 6.)

Perhaps realizing the rosier of their two characterizations of the complaint could not be taken seriously, Defendants raise in a single sentence in their reply brief that Defendant Baldwin, in his official capacity, may be shielded by the Eleventh Amendment. (ECF No. 21 at 6.) However, the Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Likewise, the Court is not "required to address perfunctory and undeveloped arguments[.]" *Williams v. Eastside Lumberyard & Supply Co.*, 190 F. Supp. 2d 1104, 1114 (S.D. Ill. 2001). The Court is not inclined to do so here. This does not change because the single sentence offered by Defendants touches on the Eleventh Amendment. *See Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998) ("The Eleventh Amendment, however, does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own.") (internal citation omitted). "[B]ecause of the importance of state law in analyzing Eleventh Amendment questions" and because "the parties have not briefed the issue," the Court declines to

raise the issue *sua sponte*. *Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 515 n.19 (1982).

> ii. *Whether the third, fourth, and fifth causes of action are barred against federal officials in their official capacity?*

The Court now turns to the substance of Defendants' primary FTCA argument.[9] Again, what should have been a straightforward point is complicated by the quality of the briefing — this time by Plaintiff's opposition. Consequently, a brief discussion of the concept of the sovereign immunity of the United States is necessary before summarizing Defendants' straightforward argument and explaining why the opposition is non-responsive.

It is well-settled that "the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal alterations omitted). "The FTCA, enacted in 1946, was designed primarily to remove the sovereign immunity of the United States from suits in tort." *Levin v. United States*, 568 U.S. 503, 506 (2013) (internal quotation marks omitted). The FTCA "gives federal district courts exclusive jurisdiction over claims against the United States for 'injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." *Id.* (quoting 28 U.S.C. § 1346(b)(1)). "Substantively, the FTCA makes the United States liable 'to the same extent as a private individual under like circumstances,' § 2674, under the law of the place where the tort occurred, § 1346(b)(1), subject to enumerated exceptions to the immunity waiver, §§ 2680(a)–(n)." *Id.* at 506–07. "Of the FTCA's [enumerated] exceptions, none bars suits by service members against the federal government." *Johnson v. United States*, 704 F.2d 1431, 1434 (9th Cir. 1983). However, one of the enumerated exceptions "withheld consent to be sued for '[a]ny claim arising out of the combatant activities of the military or naval forces, or the Coast Guard, during time of war,'" *Costo v. United States*, 248 F.3d 863, 866 (9th Cir. 2001) (quoting § 2680(j)). "[T]his exception

---

[9] Defendants, again in a single sentence, advert to what they likely intended to be an alternative argument. *Bartell v. JPMorgan Chase Bank, NA*, 607 F. App'x 731, 732 (9th Cir. 2015) ("Conclusory statements, tautologies and a couple of citations don't an argument make."). If a legal issue is not worth analyzing in a brief, there is no need to "issue spot" it for the Court. Certainly, the Court does not have the time to do the parties research for them.

was broadened significantly by the Supreme Court, which held in *Feres v. United States*[, 340 U.S. 135, 146 (1950),] that the Government is not liable under the [FTCA] for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* (internal quotation marks omitted). This judicially created exception is known as the "*Feres* doctrine." In short, if a claim that would otherwise come within the text of the FTCA's waiver of sovereign immunity but also falls within the scope of the *Feres* doctrine or one of the enumerated exceptions, "the court is without jurisdiction to hear the case." *Monaco v. United States*, 661 F.2d 129, 131 (9th Cir. 1981) (internal citation and quotation marks omitted).

Defendants' argument can be briefly summarized as follows: Claims against federal officials in their official capacities are suits against the United States that are barred by sovereign immunity unless the United States has waived its immunity. (*See* ECF No. 13-1 at 11–12.) Defendants contend the only relevant waiver arguably applicable here is the FTCA and that the FTCA has an administrative exhaustion requirement. (ECF No. 13-1 at 11.) Citing Ninth Circuit authority, Defendants argue Plaintiff is obligated to allege compliance with that requirement in order avoid dismissal of those claims. (ECF No. 13-1 at 11–12.) Defendants argue Plaintiff's third, fourth, and fifth causes of action must be dismissed for failing to "allege . . . he submitted an administrative claim for the alleged frauds[.]" (ECF No. 13-1 at 11–12.)

The Court finds that Plaintiff concedes this point by failing to address its substance in his opposition.[10] *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132. That is, these claims are dismissed with respect to Defendant McCord in his official capacity and Defendant Baldwin in his official capacity insofar as he is being sued in his capacity as a federal official. However,

---

[10]     Plaintiff acknowledges the FTCA with a pair of block quotations to § 1346(b)(1) and § 2680. (ECF No. 28 at 26.) This is followed by an acknowledgement of the *Feres* doctrine. (ECF No. 28 at 27 & n.13.) Plaintiff then block quotes the Ninth Circuit's opinion from *Jackson v. Tate*, 648 F.3d 719 (9th Cir. 2011). Without bothering to explain why it follows from his series of citations, Plaintiff states "[t]he FTCA is not applicable to this matter at all." (ECF No. 28 at 27.) It seems most likely that this was meant to say "the **_Feres_ doctrine** does not apply to this matter at all." That statement would have the benefit of advancing his cause to some degree. It would not, however, in anyway address Defendants' exhaustion requirement argument. If, on the other hand, Plaintiff meant to be taken literally, he would then be *outside of the only waiver of sovereign immunity* identified as arguably applicable without coming forward with another source of waiver. Either way, Plaintiff's response is wholly inadequate.

        Additionally, for the sake of completeness, the Court notes that Plaintiff seems to be requesting the *Feres* doctrine "be revised if not overruled." (ECF No. 28 at 27 n.13.) If this indeed a request of this Court (rather than a musing), obviously, it must be denied. Suffice it to say that the Supreme Court sits in review of this Court and not the other way around.

this dismissal is with leave to amend as the Court cannot conclude that Plaintiff is unable to plead exhaustion if given the opportunity. Because these claims are not barred with respect to either of Defendants in their individual capacities (or Defendant Baldwin to the extent he is sued in his official capacity as a non-federal official), this leave is granted subject to the Court's analysis of these claims below with respect to Defendants' motion pursuant to Rule 12(b)(6).

### C. Rule 12(b)(6)

Having concluded that none of Plaintiff's causes of actions are moot and that Defendants' sovereign immunity arguments require dismissal of the third, fourth, and fifth causes of action as they apply to Defendants in the official capacities as federal officials, the Court must now examine Defendants' Rule 12(b)(6) arguments. For the reasons set forth below, the Court concludes that each of the causes of action fails to state a claim for which relief can be granted. The Court will analyze the causes of action in order, again analyzing the state law causes of action together. Before doing so the Court will briefly set out the relevant legal standard.

#### i. *Legal Standard*

A motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege

14

"'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

///

///

Plaintiff's conceptualization of his first cause of action is a bit of a moving target.  This is immediately obvious when paragraph 20 of the complaint is compared with Plaintiff's opposition to the Motion to Dismiss as a whole.  Paragraph 20 provides that "[t]he basic thrust of Plaintiffs [sic] Complaint is 42 U.S.C. [§] 1983 failure to train." (ECF No. 1 at ¶ 20.)  Surprisingly, the phrase "failure to train" appears nowhere in the twenty pages of Plaintiff's opposition.  (*See generally* ECF No. 28.)  Only after a close read of the opposition does one learn that the first cause of action seemingly was intended to allege a violation of the Due Process Clause of the Fourteenth Amendment.  Conspicuous by its absence from the complaint is the phrase "due process."  (*See generally* ECF No. 1.)  Not surprisingly, Defendants were able to assemble a series of arguments as to why Plaintiff's first cause of action should be dismissed.  Equally unsurprising, the Court need not address some of these arguments in detail (if at all) as they were directed toward a theory of the case that Plaintiff has seemingly abandoned altogether.

Instead, the Court will briefly explain why the first cause of action plainly fails.  The Supreme Court has "said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks omitted).  Therefore, "one cannot go into court and claim a 'violation of § 1983'— for § 1983 by itself does not protect anyone against anything." *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979).  Put another way, the "first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (plurality opinion).  As Plaintiff has failed to take this basic step, the first cause of action must be dismissed for failure to state a claim.  Obviously, this deficiency can be cured, so the Court will grant Plaintiff leave to amend.  However, the Court will also briefly address a few additional points raised by the briefing to conserve judicial resources should Plaintiff attempt to amend his complaint.

First, it is apparent that if given the opportunity to amend Plaintiff would do so in a way that also fails as a matter of law.  Plaintiff's position is that he and his fellow CANG members have been deprived of a "property interest" without due process in violation of the Fourteenth

Amendment.  (*See* ECF No. 28 at 21, 27.)  In Plaintiff's view, the "property interest" in question is a contractual right to receive "bonus monies" per the terms of their respective enlistment agreements.  (*See, e.g.*, ECF No. 28 at 21.)  However, as Defendants correctly observe, it is settled that this is not the law.  "A soldier's entitlement to pay is dependent upon statutory right." *Bell v. United States*, 366 U.S. 393, 401 (1961).  Simply put, "common-law rules governing private contracts have no place in the area of military pay."  *Id.*  "This is true even though recruiter and recruit may each sign an enlistment contract agreeing to its contents; the recruit's entitlement to basic pay is simply not governed by this contract, but by statute." *Schism v. United States*, 316 F.3d 1259, 1271 (Fed. Cir. 2002) (en banc).  The situation is no different when a soldier's entitlement to an enlistment bonus is at issue.  *United States v. Larionoff*, 431 U.S. 864, 869 (1977).

This does not necessarily render amendment of the first cause of action altogether futile. When it comes to the entitlement to bonuses, "the rights of the affected service members must be determined by reference to the statutes and regulations" governing the bonus program at issue. *Id.*  Plaintiff's complaint seems to take the position that (i) he was eligible for his bonuses and incentive payments under applicable law in place at the time of his reenlistment (independent of the terms of his enlistment agreement), (ii) he maintained that eligibility throughout the time he performed his service, (iii) CANG and the Department of Defense "falsely contend[ed]" he was ineligible under applicable law, including 37 U.S.C. § 331, and (iv) the military began recouping his bonuses, despite the falsity of their contentions.  (*See* ECF No. 1 at ¶¶ 39–55.)  Defendants make no effort to explain why Plaintiff would be foreclosed from bringing a constitutional claim in those circumstances.  As the Ninth Circuit, sitting en banc, stated nearly forty years ago, "[a]s to vested rights, the distinction between earned military pay and that to be earned in the future has long been recognized." *Costello v. United States*, 587 F.2d 424, 425 (9th Cir. 1978) (en banc).  It did so citing *Larionoff*.  *Id.*  In *Larionoff*, the Supreme Court observed that "[n]o one disputes that Congress may prospectively reduce the pay of members of the Armed Forces, even if that reduction deprived members of benefits they had expected to be able to earn." *Larionoff*, 431 U.S. at 879.  However, it would raise "serious constitutional questions" for "Congress to deprive

17

a service member of pay due for services already performed, but still owing." *Id.* The Court declines to wade further into this thicket due to the failure of the parties to analyze this topic, except to conclude that the Court is not persuaded granting leave to amend would be a futile enterprise.

With that being said, a second topic warrants brief discussion. Defendants correctly observe that "by its very terms, § 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) (noting "the fact that similar standards are used in analyzing the prerequisites of § 1983 and *Bivens* causes of action does not mean that the claims are interchangeable"). Thus, if Plaintiff intends to bring a federal constitutional claim against a federal government actor, Plaintiff must choose a proper vehicle. However, since CANG members are federal government actors at times and state government actors at others, Plaintiff may plead in the alternative, as necessary.

Lastly, in their opening brief, Defendants state the "gravamen of the first cause of action appears to be that the defendants failed to properly train the military personnel who were responsible for administering the reenlistment incentive programs." (ECF No. 13-1 at 6.) Citing *Feres*, Defendants argue that the Court "lacks jurisdiction over any claim seeking to dictate how federal military units must be trained." (ECF No. 13-1 at 6.) As previously noted, Plaintiff makes no mention of "failure to train" in his opposition, let alone attempting to address this argument. Consequently, the Court deems Plaintiff to have conceded this argument. *See Stichting Pensioenfonds ABP*, 802 F. Supp. 2d at 1132.

### iii. Second Cause of Action: "Breach/Impairment of Contracts"

As Defendants correctly observe, Plaintiff's second cause of action proceeds with the understanding that he and his fellow CANG members have a contractual right to their enlistment bonuses and incentive payments. (ECF No. 13-1 at 5–6.) The Court has already explained why this argument is foreclosed by binding precedent. Therefore, the second cause of action must be dismissed without leave to amend, as an amendment would clearly be futile.

///

///

18

*iv.    Third, Fourth, and Fifth Causes of Action*

The Court will analyze Defendants' arguments with respect to the third, fourth, and fifth causes of action together, as the parties have done so.  Defendants contend — and Plaintiff does not dispute — each of these causes of action are a species of fraud within the meaning of Rule 9(b) and, therefore, are subject to its heightened pleading standard.  (*Compare* ECF No. 13-1 at 12 *with* ECF No. 28 at 28.)  Defendants argue that Plaintiff fails not only to meet that standard but falls short of the "more relaxed notice pleading standard under Rule 8."  (ECF No. 13-1 at 12–13.)  Plaintiff's opposition "admits each claim is short laying out the . . . elements for each claim, but the first paragraph of every count in Plaintiff's complaint states . . . [that it] incorporates by reference all preceding and following paragraphs."  (ECF No. 28 at 28 (emphasis removed).)  Plaintiff observes that the complaint contains "103 total numbered paragraphs" and collectively these satisfy Rules 8 and 9.  (ECF No. 28 at 28.)  Plaintiff states this is "conclusively" demonstrated by Defendants ability to "identity [sic] the nature of all claims, the parties involved and the facts[.]"  (ECF No. 28 at 28.)

The Court will first address Defendants' Rule 9 argument.  In relevant part, Rule 9(b) provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted).

With this in mind, it is clear that none of these three causes of action meet the Rule 9(b) standard.  As an initial matter, it impossible for a person reviewing the complaint to determine which Defendants each cause of action is brought against.  This is easily illustrated by examining three factual allegations from the complaint.  With respect to the third cause of action, paragraph

86 of the complaint provides as follows: "Defendant made intentional misrepresentations of material fact to Plaintiff, Defendant represented to Plaintiff the [sic] he was eligible for reenlistment bonuses." (ECF No. 1 at ¶ 86.) With respect to the fourth cause of action, paragraph 93 provides: "Defendant's [sic] intentionally took false actions, made false statements, misrepresentations, false representations, engaged in concealment, and/or non-disclosure."[11] (ECF No. 1 at ¶ 93.) With respect to the fifth cause of action, paragraph 99 provides: "Defendant concealed or suppressed a material fact[.]" (ECF No. 1 at ¶ 99.) The use of the singular "Defendant" without giving his name or any information that would enable a person reviewing the complaint to discern which Defendant each cause of action is being brought against falls short of Rule 9(b)'s particularity standard.[12]

So there is no confusion, the problem is not Plaintiff's attempt to incorporate by reference. There are no factual allegations *anywhere in the complaint* that describe Defendant McCord doing anything of any sort — literally none. He is mentioned in the first numbered paragraph under the heading "Jurisdiction and Venue," never appears again in the 102 numbered paragraphs that follow, and inexplicably reappears under "Request for Relief." (*See* ECF No. 1 at ¶ 1.) The treatment of Defendant Baldwin is similar, except that he appears in a single numbered paragraph. That paragraph recounts remarks allegedly made by Defendant Baldwin to the effect that CANG faced "monumental" problems, had "lost its way, ethically and morally," and was in need of a change of culture. (ECF No. 1 at ¶ 69.) The reality is that the complaint — *in 103 paragraphs* — manages to say nothing meaningful about either Defendant, let alone the "the who, what, when, where, and how of the misconduct charged, as well as what is false or

---

[11] The use of "Defendant's" is obviously a typo. In context, it is apparent that "Defendant" was intended rather than "Defendants." In any event, for the reasons discussed in this section of the Order, the Rule 9(b) deficiencies go much deeper than this and the standard would not be met even if "Defendants" were intended in this one instance.

[12] For completeness's sake, the Court notes that footnote 23 of the complaint identifies one instance, under the heading "Request for Relief," where "Defendant as used here applies to both Defendants." (ECF No. 1 at 18 n.23.) There is no indication this is meant as a general statement applicable to the complaint beyond the "Request for Relief." However, even if it were, it would not change things. "Rule 9(b) does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (internal quotation marks omitted). "'[E]veryone did everything' allegations" are properly dismissed. *Id.*

misleading about [the purportedly fraudulent] statement, and why it is false" required by Rule 9(b). *Cafasso*, 637 F.3d at 1055.

As each of the causes of action fails under Rule 9(b), the Court need not discuss Defendants' Rule 8(a) argument in detail. If a reader can walk away having read a complaint without having the slightest clue whether a cause of action is brought against him at all, he surely is not on the "fair notice" required by Rule 8(a)(2). *Twombly*, 550 U.S. at 555.

One more item requires mention, as Plaintiff will be given leave to amend with respect to these three causes of action. There are three paragraphs that may have been an attempt to give the "who, what, when, where, and how" required by Rule 9(b) with respect to *someone*. *Cafasso*, 637 F.3d at 1055. They provide as follows:

> In March 2006 Plaintiff Sgt. Byran [sic] James Strother and other [CANG] members were by Order of the Adjunct [sic] General ordered to go to a retention seminar. At the above mentioned retention seminar [CANG] members were put into an assembly line were [sic] they signed contracts to stay in [CANG]. Acting "Under Color of Law" [CANG] members were given advice and counsel by superiors to extend their time in the guard. [CANG] members then signed the contracts acting in good-faith in reliance from [CANG] superiors in attendance.

(ECF No. 1 at ¶¶ 36–38.) Assuming that the superiors in question are Defendants (or someone else whom these causes of action could be brought against), and further assuming that it satisfies the "who, . . . when, where, and how" of the Rule 9(b) requirement, Rule 9(b) would still not be satisfied. A person reviewing the complaint can only speculate what was said when CANG members allegedly received "advice and counsel . . . to extend their time" in the military. (ECF No. 1 at ¶ 38.) A person reviewing the complaint is left with no idea about what "is false or misleading about [any] purportedly fraudulent statement[s], and why [they are] false," as Rule 9(b) requires. *Cafasso*, 637 F.3d at 1055 (original alterations omitted).

### III.    CONCLUSION

In summary, for the reasons set forth above, (i) none of the causes of action in the complaint are moot, (ii) Defendants' arguments relating to sovereign immunity and the FTCA require the dismissal of the third, fourth, and fifth causes of action insofar as they are brought against federal officials in their official capacities, (iii) each of the causes of action must be

21

dismissed for failure to state a claim, (iv) the second cause of action is dismissed with prejudice, and (v) the first, third, fourth, and fifth causes of action are dismissed with leave to amend.

Accordingly, IT IS HEREBY ORDERED as follows:

1. The Motion to Dismiss is GRANTED in part and DENIED in part, as set forth above;

2. The complaint (ECF No. 1) is dismissed, as set forth above;

3. Plaintiff may file an amended complaint in conformity with this Order within 30 days of the date this Order is filed;

4. The Motion for Class Certification (ECF No. 15) is DENIED as MOOT; and

5. The Motion to Strike is DENIED without prejudice, subject to renewal if Plaintiff files an amended complaint.

IT IS SO ORDERED.

Dated: December 4, 2017

Troy L. Nunley
United States District Judge